# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRAVERN RESIDENTIAL, II, LLC, | No. 44730-4-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

MAXA, J. — Bravern Residential II, LLC (Bravern) appeals the trial court's summary judgment order dismissing its refund action against the Department of Revenue (Department) for retail sales and business and occupation (B&O) taxes payable on construction services performed by one of its members, PCL Construction Services, Inc., (PCL) on property Bravern owned. Under WAC 458-20-170(2), a "speculative builder" – a contractor that builds on property it owns – is not subject to retail sales and B&O taxes on its construction services. Bravern argues that because PCL was one of its members, Bravern should be considered the entity performing construction services and treated as a speculative builder. Bravern also argues that because PCL received only credits to its capital account in exchange for its construction services, the tax exemption in WAC 458-20-106 for the transfer of capital assets applies.

We hold that (1) Bravern was not a speculative builder under WAC 458-20-170(2)(b) because PCL acting as a separate entity, and not Bravern, performed the construction services; and (2) the exemption in WAC 458-20-106 for transfers of capital assets is inapplicable because the asset transferred to Bravern – PCL's construction services – was not a *capital* asset.

Accordingly, we affirm the trial court's summary judgment dismissal of Bravern's tax refund action.

## FACTS

Bravern is a limited liability company (LLC) formed in 2007 for the purpose of building a residential condominium tower known as Signature Residences at The Bravern, Tower 4 on land Bravern owned in Bellevue. Bravern had two members: Bravern Residential Mezz II, LLC (BRM), a real estate development company, and PCL, a real estate construction company. BRM had a 99 percent ownership interest in Bravern, and PCL had a one percent ownership interest. BRM was the managing member and retained control over Bravern's management.

The Bravern LLC operating agreement obligated BRM to transfer title to land for the development to Bravern and obligated PCL to contribute construction services and materials pursuant to an attached "services addendum." Clerk's Papers (CP) at 60. The services addendum provided that PCL would perform and manage all of the work related to the construction of Tower 4 in exchange for credits to its Bravern capital account. These capital account credits would equal PCL's cost of work and service overhead, not to exceed $116,226,428. In order to obtain the credits, the services addendum authorized PCL to submit periodic statements to Bravern setting forth the value of PCL's activities.

The operating agreement contemplated regular capital account distributions from Bravern to PCL. If PCL's capital account exceeded one percent of the total capital contributions to Bravern, then Bravern was allowed to make a distribution from PCL's capital account to PCL in an amount necessary to cause PCL's capital account to return to one percent. Although Bravern technically had discretion in making these distributions, the operating agreement penalized

Bravern and BRM if Bravern did not make monthly capital account distributions to PCL. The operating agreement provided that if PCL's capital account balance exceeded one percent of Bravern's total unreturned capital for more than 20 days, the excess would accrue at a preferred return rate of "prime plus 2.5% per annum." CP at 63. In addition, if PCL's capital account exceeded two percent for more than 15 days, PCL could require BRM to purchase PCL's entire interest in Bravern at a specified price unless PCL received a capital account distribution within 30 days. Bravern had the funds to make capital account distributions to PCL because the operating agreement required BRM to contribute cash to Bravern when necessary to enable Bravern to pay its expenses.

After construction began on Tower 4, PCL submitted to Bravern monthly statements showing the value of its construction services. That value then was credited to PCL's capital account. The value of these services totaled over $121 million by the end of the project. PCL then received monthly capital account distributions from Bravern for the construction activity associated with each billing statement. Bravern never allowed PCL's capital account to exceed one percent of Bravern's total capital contributions, so application of the preferred return clause was never triggered. A few months after completing construction, PCL assigned its interest in Bravern to BRM. PCL never received any distribution of profits from Bravern.

In August 2007, Bravern requested confirmation from the Department that Bravern would be treated as a "speculative builder" under WAC 458-20-170(2)(a), which would allow it to avoid paying retail sales or B&O taxes on PCL's construction services. In February 2008, the Department issued a letter ruling denying Bravern's request, determining that Bravern was not a speculative builder. Bravern appealed the Department's denial of its ruling request to the

3

Department's Appeals Division. The Appeals Division denied the appeal and upheld the Department's reasoning in its ruling denying speculative builder status to Bravern.

Because there is no mechanism for direct judicial review of the Department's denial of a ruling request,[1] Bravern paid $107,842.10 in taxes on $1,135,180 in services PCL provided for the month of June 2009.[2] Bravern then filed an action in superior court for a refund of those taxes.[3] Bravern moved for summary judgment, arguing that because PCL was a member of Bravern, Bravern had constructed Tower 4 on its own land and therefore was a speculative builder in accordance with the Department's published construction guidelines for joint ventures. The Department also moved for summary judgment, arguing that Bravern was required to pay taxes on the services PCL performed because PCL had constructed Tower 4 on Bravern's property, and therefore was engaged in making a retail sale. The Department further argued that Bravern was not a speculative builder because PCL received compensation for its services independent of any right to Bravern's profits. Alternatively, the Department argued that Bravern was not entitled to a refund because RCW 82.32.655 specifically prohibited the type of tax avoidance transactions in which Bravern was engaged.

The trial court granted the Department's summary judgment motion and denied Bravern's motion. Bravern appeals.

---

[1] *Booker Auction Co. v. Dep't of Revenue*, 158 Wn. App. 84, 88-89, 241 P.3d 439 (2010).

[2] It is unclear whether this amount was for retail sales taxes or B&O taxes, or both. If not a speculative builder, as the purchaser of services Bravern would be required to pay retail sales taxes. As the provider of services, PCL and not Bravern would have the obligation to pay B&O taxes.

[3] Bravern's potential tax liability for the entire project was significantly higher.

4

ANALYSIS

A.    STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *In re the Estate of Bracken*, 175 Wn.2d 549, 562, 290 P.3d 99 (2012). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). Here, the parties do not dispute the material facts. Accordingly, the issue before us is whether the trial court correctly determined that Bravern was not entitled to a tax refund, a question of law we review de novo. *Bracken*, 175 Wn.2d at 562.

To establish that a taxpayer is entitled to a refund, the taxpayer must prove that the tax paid was incorrect and prove the correct amount of tax. RCW 82.32.180. In order to determine whether the tax paid here was correct, we must interpret the applicable statutes and Department regulations regarding speculative builders, which are questions of law we review de novo. *Skinner v. Civil Serv. Comm'n*, 168 Wn.2d 845, 849, 232 P.3d 558 (2010).

B.    REQUIREMENTS FOR "SPECULATIVE BUILDER" STATUS

1.    Statutory Framework

The State of Washington imposes a tax on the selling price of retail sales in the state, payable by the purchaser. Former RCW 82.08.020(1) (2010); RCW 82.08.050(1). Washington also imposes a B&O tax on the gross proceeds of retail sales in the state, payable by the business owner. Former RCW 82.04.250(1) (2010). For both taxes, a "retail sale" includes tangible personal property consumed and services rendered in constructing buildings on real property for

5

consumers. Former RCW 82.04.050(2)(b) (2010); former RCW 82.08.010(1)(a) (2010), *recodified as* RCW 82.08.010(1)(a)(i); *Dep't of Revenue v. Nord Nw. Corp.*, 164 Wn. App. 215, 224, 264 P.3d 259 (2011), *review denied*, 173 Wn.2d 1019 (2012).

A contractor constructing a building on real property owned by a consumer is a "prime contractor" under WAC 458-20-170(1)(a). A "consumer" includes a "person who is an owner, lessee or has the right of possession to or an easement in real property which is being constructed, repaired, decorated, improved, or otherwise altered by a person engaged in business." Former RCW 82.04.190(4) (2010). The prime contractor is a seller of services, and under former RCW 82.08.020(1)(c) the consumer property owner must pay retail sales tax on the amount charged for those services. Under former RCW 82.04.250(1) the prime contractor also must pay B&O taxes measured by the gross proceeds of the sale of its services.

In contrast, a contractor constructing a building on real property it owns is not required to pay retail sales or B&O taxes. WAC 458-20-170(2)(b). WAC 458-20-170(2)(a) calls such a person a "speculative builder." A speculative builder is not required to pay these taxes on the value of its construction services because it is not engaged in a retail sale. *See Nord*, 164 Wn. App. at 225. Although speculative builders are not required to pay retail sales tax on the value of their construction services, they "must pay sales tax upon all materials purchased by them and on all charges made by their subcontractors." WAC 458-20-170(2)(e).

2. Regulatory Interpretation

A determination of whether Bravern was a speculative builder requires interpretation of WAC 458-20-170. When interpreting a regulation, we follow the same rules we use to interpret a statute. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 322, 189 P.3d 28 (2008). As with statutory interpretation, where a regulation is clear and unambiguous we must give effect to that plain meaning. *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). In ascertaining a regulation's plain meaning, we also consider the context in which the regulation appears, related regulations and statutes, and the statutory scheme of which the regulation is a part. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). We also interpret a regulation in a manner that gives effect to all its language without rendering any part superfluous. *Grays Harbor Energy, LLC v. Grays Harbor County*, 175 Wn. App. 578, 585, 307 P.3d 754 (2013). If a statute is ambiguous, we may apply rules of statutory construction and look to other sources to discern legislative intent. *Overlake Hosp. Ass'n*, 170 Wn.2d at 52.

"While 'the ultimate authority' for determining a statute's meaning remains with the court, considerable deference will be given to the interpretation made by the agency charged with enforcing the statute." *Nord*, 164 Wn. App. at 229 (quoting *S. Martinelli & Co. v. Dep't of Revenue*, 80 Wn. App. 930, 937, 912 P.2d 521 (1996)). "Our paramount concern is to ensure that the regulation is interpreted in a manner that is consistent with the underlying policy of the statute." *Overlake Hosp. Ass'n*, 170 Wn.2d at 52.

Finally, we must find that a tax applies unless the legislature has expressed a clear intent to provide an exemption. *TracFone*, 170 Wn.2d at 296-97. Tax exemptions may not be created

7

by implication. *TracFone*, 170 Wn.2d at 297. And we construe tax exemptions narrowly. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 455, 210 P.3d 297 (2009).

3. Bravern Did Not Perform Construction Services

WAC 458-20-170(2)(a) defines a speculative builder as "one who constructs buildings for sale or rental upon real estate owned by him." Bravern was not a contractor and performed no construction services. However, Bravern argues that because PCL was one of its members, the construction work PCL performed technically was performed by Bravern. Therefore, Bravern claims that it was "one who constructs buildings" as required for speculative builder status under WAC 458-20-170(2)(a). We disagree for three reasons.

First, the Bravern operating documents show that PCL performed the construction work as a separate entity from Bravern. The operating agreement required PCL, not Bravern, to perform construction services. Further, the services addendum provided that PCL would receive compensation from Bravern in the form of capital account credits and capital account distributions for these construction services. These documents set up a thinly veiled sale of services. PCL submitted to Bravern monthly statements showing the value of construction services performed (progress billing statements). PCL then received monthly capital account distributions from Bravern (payment for those services) in return. If Bravern had been performing the work, PCL's only payment would have been through Bravern's profits on the project. But there is no indication that the capital account payments were tied to Bravern's profits, and PCL actually did not receive any profit distributions from the project.

Second, Washington law treats a member of an LLC as a separate person from the LLC entity itself. *Nord*, 164 Wn. App. at 230. This concept is reflected in RCW 25.15.070(2)(c),

8

which provides that an LLC is a separate legal entity. Similarly, the court in *Nord* emphasized the "well established legal principle that a business entity is a distinct, separate 'person' from its owners." *Nord*, 164 Wn. App. at 230. Because PCL and Bravern are separate entities, Bravern cannot be treated as the entity performing the construction services that PCL actually performed.

Third, WAC 458-20-170(2)(f) provides that a joint venture performing construction on land owned by a co-venturer is not a speculative builder because it is constructing upon land owned by others.[4] The present situation is different: PCL (the member) performed construction services on property owned by Bravern (the LLC). However, based on the principle stated above that the owners of an LLC are separate from the LLC entity, WAC 458-20-170(2)(f) must be applied to this situation as well. *See Nord*, 164 Wn. App. at 220, 229-30 (holding that an LLC member building on property owned by the LLC was not a speculative builder because the member and the LLC were separate entities). As a result, under the terms of WAC 458-20-170(2)(f) Bravern was not a speculative builder because its member PCL was constructing on property Bravern owned.

Based on a plain reading of WAC 458-20-170(2)(a) and (f), Bravern was not a speculative builder because one of its members as a separate entity, and not Bravern itself,

---

[4] WAC 458-20-170(2)(f) provides: "Persons, including corporations, partnerships, sole proprietorships, and joint ventures, among others, who perform construction upon land owned by their corporate officers, shareholders, partners, owners, co-venturers, etc., are constructing upon land owned by others and are taxable as sellers under this rule, not as 'speculative builders.' "

performed the construction services on Bravern's property.[5] Accordingly, we hold that the trial court did not err in dismissing Bravern's tax refund action.

4.    Department Construction Guidelines

Bravern argues that its claim to speculative builder status was supported by (1) the Department's construction guidelines, (2) previous Department determinations regarding speculative builders, and (3) previous letter rulings from the Department regarding other entities. These documents are immaterial because they cannot contradict the plain language of WAC 458-20-170(2), upon which we base our conclusion that Bravern was not a speculative builder. *See Overlake Hosp. Ass'n*, 170 Wn.2d at 52. Therefore, we need not consider these arguments. However, because agency interpretations may be relevant in interpreting regulations, we will address the Department's construction guidelines.

The Department's construction guidelines upon which Bravern relies provide:

If construction services are performed by a member [of a joint venture] as a separate entity on land owned by one of the other entities (the joint venture entity or landowner), the construction services are taxable as custom prime contracting. The contractor must collect retail sales tax on the full contract price (labor and materials) from the landowner. This is true even if the contractor is a member of the joint venture.

When a joint venture owns the land and the contractor performs construction services as a member of the joint venture (versus a separate entity), the joint venture is a speculative builder. In this case, the work performed by the contractor is a contribution to the capital of the joint venture. The joint venture entity must pay retail sales tax or use tax on materials purchased or produced for incorporation into the real estate.

---

[5] For the same reasons, PCL was not a speculative builder. Although PCL performed construction services, those services were performed on property owned by Bravern – a separate entity.

> To be treated as a speculative builder, a joint venture entity must actually exist and the joint venture entity must own the land and perform the construction itself.
>
> . . .
>
> Where a member is guaranteed a fixed amount as compensation for construction services independent of any right to profit or gain, such amount is taxable as custom prime contracting.

CP at 488.

The first three paragraphs of these guidelines are consistent with our analysis. If a member of a joint venture performs construction services as a separate entity rather than as a joint venture member, the transaction is taxable "even if the contractor is a member of the joint venture." CP at 488. The guidelines state that to qualify as a speculative builder, the joint venture must "perform the construction itself." CP at 488. We concluded above that Bravern was not a speculative builder because PCL was performing construction services as a separate entity from Bravern and because PCL, not Bravern, was performing the construction. The guidelines support this conclusion.

Further, the fourth quoted paragraph contains an independent rule: construction services are taxable if the member contractor is "guaranteed a fixed amount as compensation for construction services independent of any right to profit or gain." CP at 488. Here, Bravern relies on the operating agreement provision stating: "No Member shall be entitled to any guaranteed payment from the Company." CP at 64. But Bravern's operating agreement and services addendum provided that in exchange for PCL performing the construction work, PCL would receive a credit to its capital account in the amount of the cost of the work. Further, the agreement was structured so that Bravern essentially had no choice but to make regular cash distributions to PCL from that capital account as construction progressed and PCL did receive

11

distributions totaling over $121 million. Finally, these payments clearly had no connection with any profits from the project, which would not even begin to accrue until construction was complete and PCL received full payment for its work.

Despite the form of the operating agreement – stating that no payments were guaranteed – there is no question that *in substance* the agreement ensured that PCL would receive full compensation for its construction services regardless of whether the project made any profit. As a result, the fourth paragraph of the construction guidelines also does not support a finding that Bravern was a speculative builder.

5. Application of RCW 82.32.655

As an alternative ground for denying the tax refund, the Department argues that RCW 82.32.655 specifically prohibits the type of "tax avoidance transactions" in which Bravern was engaged. Because we hold that Bravern is not a speculative builder and is required to pay B&O and sales taxes on PCL's construction services, we need not address this issue.

C.    CAPITAL ACCOUNT CREDITS SUBJECT TO TAX

Bravern also claims that its transactions with PCL were not subject to B&O and retail sales taxes under WAC 458-20-106. Bravern argues that because PCL contributed services only in exchange for credits to its capital account, there was no "sale" of services and therefore the activity was not subject to tax.[6] We disagree.

A contractor performing retail construction must pay B&O tax on the gross proceeds from the sale, which is the "value proceeding or accruing from the sale" of the construction

---

[6] As noted above, Bravern would only have been obligated to pay retail sales tax on these transactions. PCL would have been obligated to pay B&O tax.

services. RCW 82.04.070. This includes "the consideration, whether money, *credits*, rights, or other property expressed in terms of money, actually received or accrued." RCW 82.04.090 (emphasis added). Similarly, for retail sales tax the "sales price" means the "total amount of consideration . . . including cash, *credit*, property, and services." Former RCW 82.08.010(1)(a) (emphasis added). Here, PCL received Bravern capital account credits in exchange for its construction services. Under the plain language of RCW 82.04.090, these credits constituted the "value proceeding or accruing" from the sale of those services, which under RCW 82.08.010(1)(a) constituted compensation for PCL's services. Therefore, these credits were subject to B&O tax and retail sales tax.

Bravern nevertheless argues that under WAC 458-20-106, PCL's capital account credits were non-taxable. WAC 458-20-106 provides that "[a] transfer of capital assets to or by a business is deemed not taxable to the extent the transfer is accomplished through an adjustment of the beneficial interest in the business." This includes transfers of "capital assets to a partnership or joint venture in exchange for an interest in the partnership or joint venture; or by a partnership or joint venture to its members in exchange for a proportional reduction of the transferee's interest in the partnership or joint venture." WAC 458-20-106.

But this regulation requires the transfer of "capital assets." WAC 458-20-106. Our Supreme Court has defined a "capital asset" for purposes of this regulation to be "something that is held only for use—a device or article kept, maintained, employed and utilized in the conduct and operation of the business." *Budget Rent-A-Car v. Dep't of Revenue*, 81 Wn.2d 171, 176, 500 P.2d 764 (1972) (emphasis omitted). PCL's compensation may have been in the form of a capital account credit, but the transfer subject to taxation was PCL's provision of construction

44730-4-II

services to Bravern. There is no indication that construction services constitute a capital asset for purposes of WAC 458-20-106. As a result, WAC 458-20-106 does not apply to the transfer of those construction services from PCL to Bravern.

    We affirm.

_____
MAXA, J.


We concur:

_____
HUNT, P.J.

_____
LEE, J.

14