**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| DYNAMIC RESOURCES, INC., | ) | No. 83281-6-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | PUBLISHED OPINION |
| Respondent. | ) | |
| | ) | |

MANN, J. — After an investigation, the Washington Department of Revenue (Department) assessed Dynamic Resources, Inc. (DRI) for unpaid retailing business and occupation (B&O) tax, retail sales tax, penalties, and interest, for the period 2006 through 2012. After an unsuccessful administrative review, DRI paid the assessments and filed suit in Thurston County Superior Court seeking a refund of the tax assessments. DRI appeals the trial court's order granting the Department's motion for summary judgment, as well as its order denying DRI's motion for reconsideration. DRI argues that its business activities are not retail sales per RCW 82.04.050(2)(a) or (b) and are thus taxed as services and other activities under RCW 82.04.290. DRI raised additional arguments in its motion for reconsideration. We affirm.

FACTS

DRI is a New York based company that serves clients around the globe. DRI has performed services for retail brands such as Apple, Nike, and Levi Strauss, retailers such as Macy's and Foot Locker, and manufacturers who produce displays for those brands. DRI's primary service is to execute "roll-out work." When one of DRI's clients has a marketing campaign—such as Nike's "Kiss My AIRS" campaign, Dr. Martens's "Rock the Holidays" campaign, and Apple's "World AIDS Day" project—DRI arranges and manages the installation of visual displays, window displays, branding elements, and in-store marketing promotions in the brands' locations throughout the country.

To execute its client's campaigns, DRI subcontracts with its network of around 300 contractors in various markets. The scope of DRI's work varies depending on the project. A prospective client identifies the nature of the work needed, number of locations, as well as how, when, and on what timeline the work needs to be completed. DRI prepares a quote based on this information and, when its client signs the quote, it becomes the project contract. Examples of work performed include hanging wall and window graphics, installing freestanding displays and furniture, attaching vinyl decals to windows and other surfaces, wrapping items with graphics, and arranging mannequins.

After contracting, DRI receives instructions from a client and prepares a manual for its subcontractors that provides specific installation and execution details. The subcontractor then completes the work along with a checklist ensuring the project's consistency with the client's instructions. Following completion, DRI generally invoices its clients on a project-wide basis that incorporates work performed at several locations.

Actual completion of the work involves skilled laborers, adept in trades such as carpentry, electrical, painting, and 3M vinyl installation. The workers bring supplies like standard carpentry tools, razor blades, cleaning supplies, straight edges, stepladders, and painter's tape. Neither DRI nor its subcontractors, however, have possession of a client's display or promotional materials. DRI and its subcontractors also have no role in creating, designing, or deciding how to display materials, they merely execute the installation and display work per a client's instructions.

In January 2013, the Department identified DRI as an unregistered company conducting taxable business activities in Washington. DRI had been doing business in Washington without paying B&O taxes, or collecting retail sales tax from its clients. After identifying DRI as an unregistered business, the Department requested that DRI complete a Washington Business Activities Questionnaire. In response to the questionnaires section asking DRI to describe its business activities, DRI stated that "[it] subcontract[s] construction labor to do repairs in retail stores + install window displays." After discussions with DRI and reviewing sales figures, the Department ultimately determined that DRI was required to register in Washington.

The Department also performed an audit of DRI's business. Based on documentation provided by DRI and discussions with its president, the Department determined that DRI "hires resident independent contractors to perform installation and repair work of window displays on its behalf." The Department concluded that this work demanded a registration and tax reporting requirement, and issued an assessment for

No. 83281-6-I/4

unpaid retailing B&O tax and retail sales tax, penalties, and interest, for 2006 through 2012, totaling $59,184.[1]

DRI sought administrative review of the Department's assessments, which the Department upheld.[2] DRI paid the assessments and filed suit in Thurston County Superior Court seeking a tax refund of assessments paid for tax periods 2006 through 2012, and the retail taxes paid for years 2014 through 2018.[3]

The parties cross moved for summary judgment on the applicability of retail sales tax to DRI's services under both RCW 82.04.050(2)(a) and (b). The trial court granted the Department's motion for summary judgment. DRI then unsuccessfully sought reconsideration. DRI appeals.

## ANALYSIS

### A. Standard of Review

We review a trial court's order granting summary judgment de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Int'l Marine Underwriters, 179 Wn.2d at 281. Here, both parties agree that there is no genuine issue of material fact. The question before us is whether DRI's visual display work meets the definition of retail sale under RCW 82.04.050(2).

---

[1] The statute of limitations for the audit and penalty assessment is four years. RCW 82.32.050(4). When a business is unregistered, however, the Department's assessment period is extended to "seven years plus the current year." WAC 458-20-230.

[2] Upon reconsideration the Department granted relief to DRI for services not at issue on appeal.

[3] To obtain relief in a tax refund claim pursuant to RCW 82.32.180, DRI must prove that the tax it paid was incorrect and prove the correct amount of tax owed. Bravern Residential, II, LLC v. Dep't of Revenue, 183 Wn. App. 769, 776, 334 P.3d 1182 (2014) (citing RCW 82.32.180).

No. 83281-6-I/5

Statutory interpretation is a question of law reviewed de novo. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9, 43 P.2d 4 (2002). The ultimate goal of interpretation is to determine and carry out the intent of the legislature. Campbell & Gwinn, 146 Wn.2d at 9. If possible, courts "must give effect to [the] plain meaning [of a statute] as an expression of legislative intent. Campbell & Gwinn, 146 Wn.2d at 9. Courts derive plain meaning from the context of the entire act as well as any "related statutes which disclose legislative intent about the provision in question." Campbell & Gwinn, 146 Wn.2d at 11.

This case involves a tax refund claim under RCW 82.32.180. DRI bears the burden to prove that the tax paid was incorrect and prove the correct amount owed. Bravern Residential, II, LLC v. Dep't of Revenue, 183 Wn. App. 769, 776, 334 P.3d 1182 (2014).

B. Retail Sales

Washington's B&O tax system is "extremely broad," imposing a tax "upon virtually all business activity carried on within the state." Steven Klein v. Dep't of Revenue, 183 Wn.2d 889, 896, 357 P.3d 59 (2015) (internal quotations omitted). RCW 82.04.220(1) provides:

> There is levied and collected from every person that has a substantial nexus with this state a tax for the act or privilege of engaging in business activities. The tax is measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.

Within the B&O tax statute, the legislature has created several different tax classifications that impose different tax rates on various business activities. Steven Klein, Inc., 183 Wn.2d at 897.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

DRI and the Department disagree as to which tax provision DRI's business activities are subject to. The Department concluded, and the trial court agreed, that DRI's visual display work was subject to retailing B&O tax and retail sales tax. DRI challenges this conclusion, arguing that its visual display work does not meet the definition of a "retail sale," and therefore, falls within the catchall B&O tax classification for "services and other activities." We agree with the Department.

RCW 82.04.050 contains a long list of definitions for the term "retail sale." The Department specifically categorizes DRI's business activities as those defined by RCW 82.04.050(2)(a) and (b).[4]

1. RCW 82.04.050(2)(a)

DRI first argues that its business activities are not retail sales under RCW 82.04.050(2)(a). We disagree.

RCW 82.04.050(2)(a) defines a retail sale as:

> (2) The term "sale at retail" or "retail sale" includes the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following:
> (a) The installing, repairing, cleaning, altering, imprinting, or improving of tangible personal property of or for consumers, including charges made for the mere use of facilities in respect thereto, but excluding charges made for the use of self-service laundry facilities, and also excluding sales of laundry service to nonprofit health care facilities, and excluding services rendered in respect to live animals, birds and insects.

DRI's business activities fall within the plain meaning of RCW 82.04.050(2)(a).[5] DRI clearly "installed" personal property performing its roll-out work. This work included

---

[4] We need only determine that DRI's business activities fall within one or the other provision for the activities to be considered retail sales.

[5] The Washington Administrative Code also supports the proposition that DRI's business activities are retail sales. See WAC 458-20-173.

No. 83281-6-I/7

affixing vinyl graphics, banners, and monitors.[6] Whether DRI's business activities constitute installation is shown by its own contracts, which often describe its services as installation. This tracks the president of DRI's interpretation of the company's work. When asked what they meant by DRI's "bread and butter" during deposition, DRI's president stated: "[DRI] started by installing window displays or cosmetics displays and graphics, so the entire range of services that we offer all emanated from this installation—what we are calling "installation services," that is our core business putting things in places. So that's our bread and butter." We agree with DRI's president—its core business is installation.

DRI argues that for an installation to become subject to retail tax, it must be a permanent attachment. DRI relies in large part on Doss Aviation v. Dep't of Revenue, No. 68669 (Wash. Bd. of Tax Appeals June 4, 2009).[7] Doss holds the opposite. In Doss, Doss Aviation argued that its business activities—refueling aircraft—were retail sales subject to RCW 82.04.050(2)(a) and (b). Doss, No. 68669, at 1. The Department asserted that Doss's business activities fell within the services and other activities provision RCW 82.04.290. Doss, No. 68669, at 9-10. In the administrative appeal, the Board of Tax Appeals (Board) agreed with the Department. The Board reasoned:

> That the tangible characteristic common to all six [services in RCW 82.04.050(2)(a)] is that they all apply to non-consumable, solid objects that are changed in various ways by various manipulations of the service provider. The Board concludes that the legislature intended the plain and everyday meaning; that retailing services apply to solid objects that may be installed, repaired, cleaned, altered, or improved; and that the legislature did not intend for "installing" to apply to a fluid consumable such as fuel.

---

[6] Beyond installation, DRI's business activities fall within a broad meaning of "altering" the client's personal property, as well as "improving" it.

[7] https://apps.bta.wa.gov/Decision%20PDF/60000%20to%2069999/68669.pdf.

-7-

No. 83281-6-I/8

*Doss*, No. 68669, at 13.

Contrary to DRI's position, *Doss* interprets RCW 82.04.050(a) as applying to nonconsumable, solid objects that are changed around. The type of business activities contemplated by the Board in *Doss* are the precise types of activities performed by DRI.[8] DRI's visual display work meets the definition of "retail sale" under RCW 82.04.050(2)(a).

2. RCW 82.04.050(2)(b)

DRI argues also that its business activities are not retail sales under RCW 82.04.050(2)(b). Again, we disagree.

RCW 82.04.050(2)(b) defines a retail sale as:

> (2) The term "sale at retail" or "retail sale" includes the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following:
> . . . .
> (b) The constructing, repairing, decorating, or improving of new or existing buildings or other structures under, upon, or above real property of or for consumers, including the installing or attaching of any article of tangible personal property therein or thereto, whether or not such personal property becomes a part of the realty by virtue of installation, and also includes the sale of services or charges made for the clearing of land and the moving of earth excepting the mere leveling of land used in commercial farming or agriculture.

DRI's business activities fall within the plain meaning of RCW 82.04.050(2)(b). DRI's visual display work, which includes placing displays throughout its customers' stores and vinyl decals on their windows, is "decorating . . . of new or existing buildings or other structures under, upon, or above real property."

_____

[8] DRI contends that RCW 82.04.051's elaboration of "services rendered in respect to" implies that only retail sales under RCW 82.04.050(2)(a) must relate to construction. This interpretation is too narrow and ignores both the statutory scheme as a whole and the practical application on taxable activities.

-8-

No. 83281-6-I/9

DRI directs us to The Department of Revenue Guide to Washington State Taxes for Interior Decorators, Designers, And Consultants (Guide) to reaffirm that its business activities are not subject to retail tax under RCW 82.04.050(2)(b). The Guide, however, is simply that—a guide. Indeed, in its opening paragraphs the Guide confirms:

> This guide provides general tax information only. The information does not replace or substitute Washington rules (WAC) or laws (RCW), nor is it intended to be a statement of Department of Revenue policy.

Despite inconsistencies between the Guide and RCW 82.04.050(2)(b), the statute controls. DRI cannot avoid its tax obligations based on informal tax guidance, and its information does not replace or substitute Washington rules or laws.[9] See Bravern, 183 Wn. App. at 780-82. DRI's visual display work meets the definition of "retail sale" under RCW 82.04.050(2)(b).

3. RCW 82.04.190

For DRI's visual display work to qualify as "retail sale," both RCW 82.04.050(2)(a) and (2)(b) also require that the service be performed on personal or real property "of or for consumers." The term consumer is defined by RCW 82.04.190. RCW 82.04.190 contains 15 definitions of consumer. We need only determine that DRI's clients fall within 1 of the 15 definitions of consumer.

RCW 82.04.190's definition of consumer includes:

> (1) Except as provided otherwise in this section, any person who purchases, acquires, owns, holds, or uses any article of tangible personal property irrespective of the nature of the person's business and including, among others, without limiting the scope hereof, persons who install, repair, clean, alter, improve, construct, or decorate real or personal property of or for consumers other than for the purpose of:

---

[9] DRI offers no evidence that it ever relied on the Guide or sought guidance from the Department. DRI did not dispute its specific tax classifications until the Department determined DRI needed to register as a business and pay taxes on the income received during its operations in Washington.

No. 83281-6-I/10

> (a) Resale as tangible personal property in the regular course of business;
> (b) Incorporating such property as an ingredient or component of real or personal property when installing, repairing, cleaning, altering, imprinting, improving, constructing, or decorating such real or personal property of or for consumers;
> . . . .
> (2) . . . (c) any person who purchases, acquires, or uses any service defined in RCW 82.04.050(2) (a) or (g), other than for resale in the regular course of business.

Because we hold that DRI's business activities fall within RCW 82.04.050(2)(a), and because its clients do not use DRI's service for resale in the regular course of business, DRI's clients meet the definition of consumer under RCW 82.04.190(2). DRI's clients also fall within the plain language of RCW 82.04.190(1): the clients purchase, acquire, hold, or use any article of personal property. They do not resell or incorporate such property per the subsection's exceptions.

C. Motion for Reconsideration

DRI argues that the trial court erred by denying its motion for reconsideration. We disagree.

This court reviews the denial of a motion for reconsideration for an abuse of discretion. McCoy v. Kent Nursery, Inc., 163 Wn. App. 744, 758, 260 P.3d 967 (2011). A trial court abuses its discretion if its decision is "manifestly unreasonable or exercised on untenable grounds or for untenable reasons." McCoy, 163 Wn. App. at 758.

First, DRI based its motion for reconsideration largely on what it asserted was "new evidence." The purportedly new evidence offered by DRI were statements by the Department at oral argument for the summary judgment hearing. As a primary matter, "argument of counsel does not constitute evidence." Green v. Am. Pharm. Co., 136 Wn.2d 87, 100, 960 P.2d 912 (1998). Even so, upon examination of the transcript there

-10-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83281-6-I/11

is no indication that the Department changed course on its position that DRI's business activities were subject to both RCW 82.04.050(2)(a) and (b). The Department has maintained this position throughout its course of dealings with DRI.

DRI contends that the Department's Guide violates equal protection principles and renders the trial court's decision unjust. DRI, however, bases this new legal theory on new and different citations to the record. "CR 59 does not permit a plaintiff to propose new theories of the case that could have been raised before entry of an adverse decision." Wilcox v. Lexington Eye Institute, 130 Wn. App. 234, 241, 122 P.3d 729 (2005). DRI's theories on equal protection were not briefed for consideration on summary judgment.[10] The trial court did not abuse its discretion by not addressing DRI's equal protection claims on reconsideration.[11]

Affirmed.

_____
Mann, J.

WE CONCUR:

_____          _____
Smith, A.C.J.                     Dwyer, J.

---

[10] DRI's introduction of new legal theories is not limited to its equal protection claim. DRI also argued that the "duty of consistency" doctrine applies. This is a federal doctrine, however, and we decline to extend it here.

[11] DRI bases its equal protection claim on the Department's Guide. But it is the legislature, not the Department, that creates tax classifications and exemptions. See Tesoro Ref. & Mktg. Co. v. Dep't of Revenue, 164 Wn.2d 310, 321, 190 P.3d 28 (2008). If the Guide classifies taxpayers inconsistent with Washington law, it is invalidation of the Guide—not the creation of an exemption or issuance of a refund—that is the proper remedy. See Assoc. Grocers, Inc. v. State, 114 Wn.2d 182, 190, 787 P.2d 22 (1990) (holding that a taxpayer is only entitled to a refund of taxes for an equal protection violation if the legislature intended an exemption to apply to the taxpayer).